# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF GEORGIA
# MACON DIVISION

| | |
|---|---|
| CYNTHIA GIVENS, | ) |
| Plaintiff, | ) |
| v. | ) CIVIL ACTION NO. 5:17-cv-389 (MTT) |
| WAL-MART STORES EAST, LP, | ) |
| Defendant. | ) |

## ORDER

Defendant Wal-Mart Stores East, LP moves for summary judgment. For the following reasons, that motion (Doc. 13) is **DENIED**.

## I. BACKGROUND

On June 28, 2016, Plaintiff Cynthia Givens entered a Wal-Mart store around 5:50 a.m. to purchase food. Docs. 13-2 ¶¶ 1-2; 14-1 ¶¶ 1-2. After picking up items from the frozen-foods aisle, she exited the aisle into an area known as the "action alley," a larger area running perpendicular to the other aisles. *See* Docs. 13-2 ¶¶ 4-7; 13-3 at 63:2-17; 14-1 ¶¶ 4-7. Wal-Mart's employee was waxing the floor of the action alley at the time. Docs. 13-2 ¶ 6; 14-1 ¶ 6. The Plaintiff slipped and fell, allegedly because of the fresh wax. Docs. 1-2 at 4-6; 13-2 ¶ 6; 14-1 ¶ 6. She filed this lawsuit in the State Court of Bibb County to recover damages for injuries sustained from the fall, alleging the fall was the result of the Defendant's negligence. Doc. 1-2 at 5-6. The Defendant removed to federal court and now moves for summary judgment. Docs. 1; 13.

## II. DISCUSSION

### A. Summary Judgment Standard

A court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute is not genuine unless, based on the evidence presented, "'a reasonable jury could return a verdict for the nonmoving party.'" *Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002) (quoting *United States v. Four Parcels of Real Prop.*, 941 F.2d 1428, 1437 (11th Cir. 1991)); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The movant may support its assertion that a fact is undisputed by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A). "When the *nonmoving* party has the burden of proof at trial, the moving party is not required to 'support its motion with affidavits or other similar material *negating* the opponent's claim[]' in order to discharge this 'initial responsibility.'" *Four Parcels of Real Prop.*, 941 F.2d at 1437-38 (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). Rather, "the moving party simply may 'show[ ]—that is, point[ ] out to the district court—that there is an absence of evidence to support the nonmoving party's case.'" *Id.* (alterations in original) (quoting *Celotex*, 477 U.S. at 324). Alternatively, the movant may provide "affirmative evidence demonstrating that the nonmoving party will be unable to prove its case at trial." *Id.*

The burden then shifts to the non-moving party, who must rebut the movant's showing "by producing … relevant and admissible evidence beyond the pleadings." *Josendis v. Wall to Wall Residence Repairs, Inc.*, 662 F.3d 1292, 1315 (11th Cir. 2011) (citing *Celotex*, 477 U.S. at 324). The non-moving party does not satisfy its burden "if the rebuttal evidence 'is merely colorable, or is not significantly probative' of a disputed fact." *Id.* (quoting *Anderson*, 477 U.S. at 249-50). Further, where a party fails to address another party's assertion of fact as required by Fed. R. Civ. P. 56(c), the Court may consider the fact undisputed for purposes of the motion. Fed. R. Civ. P. 56(e)(2). However, "credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge. … The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255.

**B. Analysis**

"Where an owner or occupier of land, by express or implied invitation, induces or leads others to come upon his premises for any lawful purpose, he is liable in damages to such persons for injuries caused by his failure to exercise ordinary care in keeping the premises and approaches safe." O.C.G.A. § 51-3-1. To prevail on a claim for negligence in a slip and fall case in Georgia, "an invitee must prove (1) that the defendant had actual or constructive knowledge of the hazard; and (2) that the plaintiff lacked knowledge of the hazard despite the exercise of ordinary care due to actions or conditions within the control of the owner/occupier." *Robinson v. Kroger Co.*, 268 Ga. 735, 748, 493 S.E.2d 403, 414 (1997).

The Defendant argues that it took reasonable care and that the Plaintiff was contributorily negligent. The Defendant has produced evidence that the store associate who waxed the floor in the early morning "mark[ed] off the area with bright yellow rope," placing it waist-high and level across the exit from the frozen-foods aisle. Docs. 13-2 ¶¶ 9-11; 13-4 ¶¶ 6-8. The same associate testified that as he was waxing the floor, he saw the Plaintiff lift the rope placed across the exit from the frozen-foods aisle and walk underneath it. Doc. 13-4 ¶ 11. He testified that "[i]mmediately after going under rope . . . Plaintiff slipped and fell." *Id.* ¶ 12. Another employee testified that he, too, saw the Plaintiff lift the rope and walk under it and that he warned the Plaintiff, by shouting, not to go under the rope, but the Plaintiff disregarded the warning, continued on, and fell. Doc. 13-5 ¶¶ 4-8. Wal-Mart also relies on surveillance camera video. Video 7 at 1:17:00-1:18:35 a.m. shows a Wal-Mart employee placing rope across the exit from an aisle near the camera. The employee then proceeds away from the camera, across other aisle exits. The footage lacks sufficient detail to conclusively establish the other aisles were roped off, and the aisle exits further from the camera have their visibility obstructed by shelving.[1]

---

[1] In the Defendant's statement of material fact in support of the summary judgment motion, the Defendant claimed that a store associate "placed the bright yellow rope across the exit of *the* frozen foods aisle that opened into the action alley." Doc. 13-2 ¶ 11 (emphasis added). In normal English speech, that sentence references one particular frozen food aisle, and in the context of the motion, common sense clearly dictates that the aisle the Defendant is talking about is the aisle the Plaintiff exited before falling down. That is, after all, the basis of the Defendant's motion.

    In the Plaintiff's response to the statement of material fact, the Plaintiff admitted that statement as undisputed. 14-1 ¶ 11. When given an opportunity to explain the admission, which the Court could have treated as dispositive, the Plaintiff's counsel claimed he had interpreted the Defendant's statement as referring to a different frozen-foods aisle altogether. Doc. 17 at 2. It is almost inconceivable how any lawyer could have interpreted the statement of material fact as referring to a different frozen-foods aisle from the one the Plaintiff exited just before she fell. And again, it is clear from the briefing, the statement, and the affidavit on which the statement was based which frozen-foods aisle the Defendant was referring to. Nonetheless, the Court will view the matter generously and assume that counsel is confused rather than disingenuous. As to the admission's effect, the Defendant did not argue the admission resolves the

Video 2[2] at 5:52:38 a.m. shows the Plaintiff exiting one of the aisles further from the camera and falling. Only the aisle nearest the camera is clearly visible in the footage. The Defendant also cites to the Plaintiff's deposition, in which she testified she could not remember whether there was a rope blocking the aisle exit and could not remember whether she had ducked under a rope before she fell. Docs. 13-2 ¶ 19; 13-3 at 63:2-64:8. The Defendant argues that the fact the Plaintiff lifted up the rope and proceeded under it is evidence both of the Defendant's exercise of reasonable care and the Plaintiff's negligence. Doc. 13-1 at 6.

In response, the Plaintiff makes two arguments. First, the Plaintiff provides an affidavit which, she argues, creates a fact issue on whether there was a rope over the exit from the frozen-foods aisle at the time the Plaintiff fell. Doc. 14-2 at 3-4. Specifically, she testifies she did not see a rope or any other indication that she should not proceed from the frozen-foods aisle into the action alley. Doc. 14-3 ¶ 5-8. Additionally, she testified that she did not lift a rope in order to step under it and did not receive an oral warning from any Wal-Mart employee. *Id*.

In response, Wal-Mart argues this testimony conflicts with the Plaintiff's deposition testimony that she could not remember whether there had been a rope, whether she had lifted a rope, or whether she had ducked under a rope. Doc. 15 at 1-5. The Defendant argues the Plaintiff's earlier inability to remember the relevant facts destroys the credibility of her affidavit and renders it "a sham." *Id*. at 5.

---

fact issue, and the Court is reluctant to enter judgment based solely on lawyer error, so the Court will not treat the admission as dispositive. The jury might.

[2] The videos are not numbered chronologically; Video 2 captures footage several hours later than Video 7.

Generally, "[i]n light of the jury's role in resolving questions of credibility, a district court should not reject the content of an affidavit even if it is at odds with statements made in an earlier deposition." *Kennett-Murray Corp. v. Bone*, 622 F.2d 887, 894 (5th Cir. 1980). However, in *Van T. Junkins & Assocs., Inc. v. U.S. Indus., Inc.*, 736 F.2d 656 (11th Cir. 1984), the Eleventh Circuit recognized a limited exception to the general rule, allowing the district court, in certain circumstances, to disregard a "sham" affidavit that is inherently inconsistent with a party's prior deposition testimony. *See id.* at 657-59; Doc. 15 at 2-4 (arguing the rule in *Van T. Junkins* bars the Plaintiff's affidavit). The sham affidavit exception should be applied "sparingly because of the harsh effect [it] may have on a party's case." *Rollins v. TechSouth, Inc.*, 833 F.2d 1525, 1530 (11th Cir. 1987). Further, not every discrepancy between an affidavit and earlier testimony renders the affidavit a sham. Rather, courts must distinguish "between discrepancies which create transparent shams and discrepancies which create an issue of credibility or go to the weight of the evidence. An opposing party's affidavit should be considered although it differs from or varies [from] his evidence as given by deposition or another affidavit and the two in conjunction may disclose an issue of credibility." *Tippens v. Celotex Corp.*, 805 F.2d 949, 953 (11th Cir. 1986) (quotation marks omitted) (citing 6 Moore's Federal Practice ¶ 56.15[4] (2d ed. 1985)). "Variations in a witness's testimony [short of inherent inconsistency] and any failure of memory throughout the course of discovery create an issue of credibility as to which part of the testimony should be given the greatest weight if credited at all. Issues concerning the credibility of witnesses and weight of the evidence are questions of fact which require resolution by the trier of fact." *Tippens v. Celotex Corp.*, 805 F.2d 949, 954 (11th Cir. 1986).

Applying that standard and looking only at the Plaintiff's allegedly conflicting testimony, the question is close. The Plaintiff's affidavit is clearly in tension with her deposition testimony, which necessarily raises questions of credibility. But again, it is a close question whether it is "inherently inconsistent."

The Plaintiff's second argument is that the video of the fall, Video 2, provides some evidence there was no rope and that she did not lift a rope and walk under it. The Plaintiff argues the video "appears to show the Plaintiff begin to slide forward immediately" upon reaching the end of the aisle and that the "trajectory of [her] fall" is inconsistent with someone who stopped, lifted a rope, crouched underneath it, and then proceeded. Doc. 14-2 at 4-5. The footage thus "leads to a conclusion that it is unlikely she lifted and crouched underneath a rope as she was entering the hazardous area." *Id.* Viewing the evidence in the light most favorable to the Plaintiff for the purposes of this motion, the Court agrees. Given that, there is a fact issue as to whether there was a rope blocking the aisle exit at the time of the fall. The credibility of the Plaintiff's testimony that there was not a rope, therefore, is an issue which will be resolved by the jury rather than the Court.

The Plaintiff also denies hearing any oral warning, Doc. 14-3 ¶ 7, so there is a fact issue as to whether the Defendant shouted a warning and, if so, whether it was loud enough for the Plaintiff to hear. The Court cannot determine as a matter of law that a rope was present at the time the Plaintiff fell, that the Plaintiff walked under a rope, or that the Defendant's employee provided an oral warning. Because those fact issues remain, the Court cannot conclude the Defendant exercised reasonable care or that the Plaintiff did not exercise reasonable care.

## III. CONCLUSION

For the reasons noted above, the Defendant's motion for summary judgment (Doc. 13) is **DENIED**.

**SO ORDERED**, this 26th day of June, 2019.

S/ Marc T. Treadwell  
MARC T. TREADWELL, JUDGE  
UNITED STATES DISTRICT COURT